IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs October 3, 2006

## STATE OF TENNESSEE v. DENNIS JARRETT

**Direct Appeal from the Circuit Court for Madison County**
No. 04-889     Donald H. Allen, Judge

No. W2005-02977-CCA-R3-CD  - Filed April 11, 2007

Defendant, Dennis Jarrett, was indicted on the following charges: count one, driving after being declared a habitual motor vehicle offender; count two, driving under the influence of an intoxicant and/or drug; count three, driving under the influence, seventh offense; count four, felony reckless endangerment; count five, felony evading arrest; count six, possession of drug paraphernalia; count seven, violation of implied consent law; and count eight, failure to appear. Following a jury trial, Defendant was found guilty on counts one, four, five, six, seven, and eight. In a separate proceeding, Defendant entered pleas of guilty on counts two and three. Following a sentencing hearing, the trial court sentenced Defendant to an effective sentence of six years for his convictions, the length and manner of service of which Defendant does not challenge on appeal. Defendant argues on appeal that the evidence is insufficient to support his conviction of felony reckless endangerment. After a review of the record, we affirm the trial court's judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which DAVID G. HAYES and ROBERT W. WEDEMEYER, JJ., joined.

George Morton Googe, District Public Defender; and Gregory D. Gookin, Assistant Public Defender, for the appellant, Dennis Jarrett.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; James G. (Jerry) Woodall, District Attorney General; and Anna M. Banks, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Background

Deputy Julie Bradley, with the Madison County Sheriff's Department, testified that she observed a green four-door vehicle run a red light on Highway 70 at approximately 1:00 a.m. on May

19, 2004. Deputy Bradley activated her emergency equipment and followed the vehicle until it pulled over. Deputy Bradley turned on the patrol car's spot light and approached the vehicle. Deputy Bradley said that she could see the driver's face in the vehicle's side mirror and the man was laughing. Deputy Bradley identified Defendant at trial as the driver of the stopped vehicle.

Deputy Bradley approached the driver's side of the vehicle and smelled alcohol. She said that Defendant refused to give her his name or driver's license. Instead, he began searching in the console with both hands. Deputy Bradley became concerned for her safety and told Defendant to place his hands in view. When he did not cooperate, she told Defendant that he was not free to leave. She said she backed up to her vehicle while she called for back-up. Defendant drove off as Deputy Bradley was getting into her vehicle.

Deputy Bradley followed Defendant as he drove through town and turned the wrong way down a one-way street. Defendant turned on to State Street which was barricaded at the other end. Defendant drove behind a building located at the end of State Street, and Deputy Bradley pulled into the building's front parking lot. She then drove slowly around the side of the building to see where Defendant had gone. Defendant drove towards her with his bright lights on. Deputy Bradley heard Defendant "rev" his engine, and Deputy Bradley threw her vehicle into reverse in order to avoid a head-on collision. Defendant swerved around and drove towards the patrol car from the rear. Defendant's vehicle missed the patrol car, jumped a curb, and blew out the right front tire.

Deputy Bradley said that Defendant exited his car and ran toward a culvert at the end of State Street. He jumped into the culvert and exited at the south end. Defendant ran beside a building until he was apprehended by another officer who had responded to Deputy Bradley's request for assistance. Deputy Bradley said that Defendant broke his foot while he was running, and an ambulance was requested. A routine pat down search prior to the arrival of the ambulance revealed a crack pipe and lighter in Defendant's left front shirt pocket.

Deputy Bradley followed the ambulance to the hospital. The attending doctor informed Defendant that his injury would require surgery and asked Defendant if he was under the influence of drugs or alcohol. Deputy Bradley said that Defendant told the doctor that he had consumed four beers and smoked twenty dollars worth of crack cocaine about thirty minutes before Deputy Bradley pulled him over. Deputy Bradley said that she read Defendant an implied consent form. Defendant told her that he understood the form, but he refused to sign the consent form or submit to a Breathalyzer test.

Deputy Bradley testified that based on her experience as a law enforcement officer, Defendant was driving under the influence of an intoxicant when she pulled him over. She smelled alcohol on Defendant's person, Defendant's eyes were bloodshot, and a twenty-four ounce cold can of beer was found in the front floorboard of Defendant's vehicle. Deputy Bradley stated that the pursuit covered five or six miles, and that she was put in fear when Defendant drove straight toward her patrol car. On cross-examination, she acknowledged that Defendant was driving between twenty and twenty-five miles per hour when he drove towards her.

Defendant testified on his own behalf. Defendant testified that he believed that Deputy Bradley had told him "he was free to go" before he drove off. Defendant acknowledged that he ran from his vehicle after the flat tire. He stated that he jumped a fence, and then noticed that his "leg [was] hanging on by a piece of string." Defendant said he heard a gunshot and maintained that Deputy Bradley shot him in the leg. Defendant said that he did not remember Deputy Bradley reading him an implied consent form. It is noteworthy that Defendant did not testify to any facts specifically related to the charge of felony reckless endangerment.

Deputy Bradley was recalled as a rebuttal witness. She identified a photograph of Defendant's injury which was taken before the arrival of the ambulance by one of the investigating officers. The photograph depicted a bone protruding from the left side of Defendant's foot, but no gunshot wounds. Deputy Bradley said that she did not have her gun drawn during the incident and did not discharge her weapon.

## II. Sufficiency of the Evidence

Defendant argues that the evidence was insufficient to support his conviction of felony reckless endangerment. He does not challenge the sufficiency of the evidence supporting his other convictions. Defendant points out that Deputy Bradley testified that Defendant's vehicle was traveling between twenty and twenty-five miles per hour when Defendant drove toward the patrol car. Defendant submits that no rational trier of fact could find beyond a reasonable doubt that a motor vehicle driven at such speed would place Deputy Bradley in "imminent danger of death or serious bodily injury."

In reviewing Defendant's challenge to the sufficiency of the convicting evidence, we must review the evidence in a light most favorable to the prosecution in determining whether a rational trier of fact could have found all the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed.2d 560, 573 (1979). Once a jury finds a defendant guilty, his or her presumption of innocence is removed and replaced with a presumption of guilt. *State v. Black*, 815 S.W.2d 166, 175 (Tenn.1991). The defendant has the burden of overcoming this presumption, and the State is entitled to the strongest legitimate view of the evidence along with all reasonable inferences which may be drawn from that evidence. *Id.*; *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn.1982). The jury is presumed to have resolved all conflicts and drawn any reasonable inferences in favor of the State. *State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn.1984). Questions concerning the credibility of witnesses, the weight and value to be given the evidence, and all factual issues raised by the evidence are resolved by the trier of fact and not this court. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn.1997). These rules are applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App 1990).

The offense of felony reckless endangerment is defined as follows:

(a) A person commits an offense who recklessly engages in conduct that places or may place another person in imminent danger of death or serious bodily injury.

(b) Reckless endangerment is a Class A misdemeanor; however, reckless endangerment committed with a deadly weapon is a Class E felony.

T.C.A. § 39-13-103. "'Reckless' refers to a person who acts recklessly with respect to circumstances surrounding the conduct or the result of the conduct when the person is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the accused person's standpoint." *Id*. § 39-11-302(c).

An automobile is considered a "deadly weapon." *State v. Tate,* 912 S.W.2d 785, 787 (Tenn. Crim. App. 1995). Deputy Bradley testified that she started to drive around the building, when Defendant approached her in his vehicle, turned on his bright lights, "revved" his engine, and drove straight toward the patrol car. Deputy Bradley said that she was fearful and threw her patrol car in reverse to avoid a head on collision. Defendant turned around and attempted to ram the patrol car from the rear but missed. The speed at which Defendant's vehicle was traveling is but one factor for the jury to consider during its deliberations.

Based on our review, and viewing the evidence in a light most favorable to the State, we conclude that a rational trier of fact could conclude beyond a reasonable doubt that Defendant consciously disregarded a substantial and unjustifiable risk to Deputy Bradley and by his conduct placed Deputy Bradley in imminent danger of death or serious bodily injury. Defendant is not entitled to relief on this issue.

## CONCLUSION

After a thorough review of the record, we affirm the judgments of the trial court.

_____
THOMAS T. WOODALL, JUDGE